**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANA MARIE SHANK, | ) | Case No. 1:24-cv-02179 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM, OPINION &** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

This case comes before the Court on judicial review of the findings of the Commissioner of Social Security. (R. 1). Plaintiff, Dana Marie Shank, filed a Complaint challenging the Commissioner's final decision denying her application for Disability Insurance Benefits. (R. 1, R. 5). The case was automatically assigned to Magistrate Judge Reuben J. Sheperd pursuant to Local R. 72.2. (*See* 12/16/2024 NDO).

On September 22, 2025, Magistrate Judge Sheperd issued a Report and Recommendation (R&R), recommending the Court adopt the Commissioner's final decision. (R. 35). He informed Plaintiff of her right to file objections. (*Id.,* PageID 9352). During the Court's automatic stay due to the government shut down (10/01/2025 NDO), Plaintiff filed an Objection (R. 37) and Supplemental Objection (R. 38). Upon lifting of the Stay on November 14 2025, Plaintiff filed a Motion to

Remand the case to the Commissioner (R. 40) and a third Objection.[1] (R. 42). After Defendant filed an Opposition to the Motion to Remand and to the Objections on November 14, 2025 (R. 44, 45), Plaintiff filed a Supplemental Motion to Remand, this time to consider new evidence, on November 21, 2025. (R. 46). She then filed a fourth Objection (R. 47) and a "Comprehensive Supplemental Objection" on November 26, 2025 (R. 48). She additionally, on December 1, 2025, filed a "Renewed Motion" for Appointment of Counsel. (R. 49). On December 2, 2025, she filed a Motion for Clarification on filing a Reply Brief (R. 50) and an Addendum to the Motion to Remand (R. 51). Finally, on December 8, 2025, she filed a Motion for Leave to File a Reply out of Time  and Motion for Clarification of Court's Briefing Schedule regarding R. 44 and R. 45 (R. 52).

For the reasons stated below, the Court DENIES Plaintiff's Motions to Remand, Motions for Clarification, and Motion for Appointment of Counsel; OVERRULES Plaintiff's Objections; ADOPTS the Magistrate Judge's R&R; and AFFIRMS the underlying decision.

**Facts**

A. **Plaintiff's Medical History**

The Court adopts and incorporates the recitation of the facts concerning Plaintiff's medical conditions and treatment history. (R. 35, PageID 9311-17). Relevant to this Court's review, is the history of the medical condition the administrative law judge (ALJ) determined to be severe – left pudendal neuropathy (20 C.F.R. 404.1520(c)). The ALJ found this medically determinable

---

[1] This Objection (R. 42) is the most comprehensive and cogent. Therefore, the Court considers this document as her official Objection given Plaintiff hastily submitted her original Objections (R. 37, R. 38) during the automatic stay as it was unclear to Plaintiff whether her deadline to file was tolled. (*See* R. 37, PageID 9364). The Objections filed after Defendant submitted its Opposition, (R. 47, R. 48), shall be treated as a Reply, and to the extent new arguments are raised therein, those arguments will not be considered as explained *infra*. Finally, Plaintiff seeks clarification on her right to file a Reply (R. 50). This is DENIED as unnecessary since Plaintiff has had ample opportunity to object and file responses to the RR and the defense's position. The Court has afforded Plaintiff substantial opportunity to present her positions; Plaintiff has sufficiently argued her positions, and they are considered herein.

impairment significantly limits the ability to perform basic work activities as required by Social Security Regulation ("SSR") 85-28. (R. 5, PageID 129-30). In addition, the ALJ found objective evidence confirming Plaintiff has non-severe impairments – strabismus and obstructive sleep apnea – the record showing little evidence of subjective complaints and no evidence of complications.[2] (*Id.,* citing 20 C.F.R. 404.1545(e)).

Plaintiff alleged additional conditions. However, the ALJ found no evidence supporting pelvic vein compression, Nutcracker Syndrome, and superior mesenteric artery compression from the alleged onset date until the date last injured ("DLI"), particularly considering post-DLI medical information. (*Id.* at 130, citing Exs. 88F/19, 43F/15, 88F/18, and 88F/7). He also found no showing of ischiofemoral impingement, at or before the DLI and no evidence to show Plaintiff had Complex Regional Pain Syndrome, chronic dizziness, and mood disorder from her alleged onset date to the DLI. Thus, these conditions did not qualify as medically determinable impairments. (*Id.*).

With respect to pudendal neuropathy, the record shows Plaintiff's abdominal pain began when she was fourteen. (R. 35, at 9311, citing Tr. 3512). In a May 2007 visit to the Cleveland Clinic, Plaintiff reported the pain was precipitated by flexion and movement and relieved by ice, rest, NSAIDs, and Vicodin. (*Id.*). Prior treatments included nerve blocks, physical therapy, mental health treatment, and medications. (*Id.* at 9311-12, Tr. 3512). Plaintiff was diagnosed with a history of endometriosis, chronic pelvic pain, and embolization of the pelvic vein. (*Id.* at 9312, Tr. 3513).

In December 2007, Plaintiff reported to her physician, Dr. Dews, her pain level at zero and that her medications were effective. But the pain leaped to a nine (out of ten) during her menstrual cycle. (*Id.*, Tr. 3517). On September 24, 2008, Plaintiff called Dr. Dew's office asking for an

---

[2]     Plaintiff had strabismus since childhood. Even so, when corrected her vision is 20/25 (Exhibit 9F/50). Examination of her eyes in July 2013 revealed BCVA in both eyes was 20/20. With respect to sleep apnea, the ALJ found insufficient evidence to show it limited the claimant from the alleged onset date until the December 31, 2012, date last insured. (R. 5 at 129).

assistive device and disability placard, stating she was having difficulty standing due to the pain. (*Id.,* Tr. 3528). Dr. Dews agreed to give her the placard but declined to prescribe a wheelchair. (*Id.).* At a December 11, 2008 appointment, Plaintiff reported that her symptoms were persistent, but self-rated current pain at a zero, reporting her medication was partially effective but causing sedation. (*Id.* at 9314, Tr. 3534). Dr. Dews no longer thought a diagnostic block would be beneficial and further found no need for therapeutic pain injections. (*Id.*).

A year later, Plaintiff sought a "second opinion" from Douglas E. Joseph, D.O. regarding right sided pelvic pain. (*Id.,* Tr. 4430). Plaintiff reported a history of pain on the left side for which she underwent a left ovarian vein embolization in November 2006. (*Id.*). Plaintiff advised the embolization resolved her left side problems, but the symptoms on her right side had been progressively worsening for three to four years, resembling the pain on her left side. (*Id.*). Dr. Joseph noted Plaintiff told him she was informed a 2006 CT scan showed evidence of "Nutcracker Syndrome" and she had been diagnosed with meralgia paresthetica, pelvic congestion syndrome, which is a diagnosis of chronic pelvic pain due to blood flow creating swollen and/or twisted veins,[3] focal (cystic) adenomyosis, which is uterine swelling due to growing tissue,[4] and endometriosis. (*Id.*). Dr. Joseph reviewed Plaintiff's medical records and found Plaintiff's symptoms were consistent with pelvic congestion syndrome. (*Id.* at 9313-15).

Plaintiff returned to Dr. Dews on January 4, 2011, reporting no pain since giving birth to her son. (*Id.* at 9315, Tr. 3536, 4378). She sought new prescriptions in case the pain returned. On January 28, 2011, Plaintiff presented for a pelvic MR venogram due to complaints of pain. (*Id.*, Tr. 4377, 4387). The radiologist found the uterus within normal limits with no evidence of fibroid tumors. (*Id.,* Tr. 4361-75, 5612-32, 4377).

---

[3]    Source:  https://my.clevelandclinic.org/health/diseases/24213-pelvic-congestion-syndrome
[4]    Source:  https://www.hopkinsmedicine.org/health/conditions-and-diseases/adenomyosis

On April 7, 2011, Plaintiff had a gynecological appointment with Tommaso Falcone, M.D., complaining of bleeding and spotting since January 2011. (*Id.,* Tr. 3563). He noted Plaintiff reported problems since 2006. (*Id.* at 9316, Tr. 3566). He found physiologic cysts were seen in her ovaries but no evidence of fibroids. (*Id.*). Plaintiff had an appointment on May 17, 2011, with psychiatrist, Dr. Robert Taylor Segraves. (*Id.,* Tr. 3567). She also had an appointment with an endocrinologist on May 23, 2011. (*Id.,* Tr. 3572). At this time, Plaintiff reported having irregular periods after her third pregnancy, but that her endometriosis pain was stable. (*Id.*). The doctor recommended that Plaintiff follow up in six months. (*Id.*).

After the alleged June 1, 2011 onset date, the record includes treatment for a nasal lesion (June 10, 2011) and an allergy test (March 22, 2012). (R. 35 at 9316, Tr. 3573-75, 4389). And while the record contains many other examination reports and medical opinions, none were given during the relevant period of June 1, 2011 to December 31, 2012. (R. 35 at 9316-17).

### B. Procedural History

Plaintiff filed for Disability Insurance Benefits on April 28, 2021, alleging a disability onset date of June 1, 2011.[5] (R. 35 at 9310, Tr. 341-44, R. 5, PageID 111, 375). She last met the insured status requirements on December 31, 2012. (R. 5 at 111).

The State's reviewing physician, Paul Sporn, M.D., reviewed Plaintiff's medical records for the asserted conditions. (*Id.,* Tr. 77, 81, R. 5 at 110-15). On December 2, 2021, finding Plaintiff had two medically determinable impairments (Peripheral Neuropathy and Inflammatory Bowel Disease), Dr. Sporn concluded there was insufficient evidence prior to the DLI to establish Plaintiff was disabled. (R. 35 at 9317, Tr. 79-80, R. 5 at 115). After Plaintiff requested reconsideration on December 6, 2021 (R. 5 at 156), Dr. Jeffrey Fauludi conducted a review of Plaintiff's visual

---

[5] Her original onset date was December 1, 2011 (R. 5 at 111), but she amended the application to assert the date as June 1, 2011. (*Id.* at 377).

disturbances and strabismus and on April 18, 2022, he also concluded Plaintiff did not meet the definition of disabled. (R. 35 at 9317, Tr. 83-88, R. 5 at 116-22).

After the claims were twice denied, first on December 2, 2021, and again on reconsideration on June 1, 2022, Plaintiff requested a hearing. (R. 5 at 110-14, 116-22, 162). The case was assigned to ALJ William Howard, and the parties participated in a video hearing on September 8, 2023. (*Id.* at 59-104, 345-46). Plaintiff, represented by counsel, testified about her diagnoses of endometriosis and infertility, but adding she had three children, who were then ages 13, 19, and 21. (R. 35 at 9312-13, 9318, Tr. 45-56). Her pregnancies made it painful to stand "because she only had treatment for her pelvic congestion syndrome on one side." (*Id.*at 9318, Tr. 46). Plaintiff also testified about her diagnosis of pudendal neuralgia. (*Id.* at Tr. 32-33). Plaintiff additionally testified about current medical conditions and the treatment she is receiving. She testified since 2011, her stomach "just stops and then enlarges…like a pregnant full-term [woman]." (*Id.* at 9321, Tr. 44). She stated her stomach gets so big that it stretches out her pelvic floor muscle and her joints making it impossible to do anything other than lie down, the episodes lasting one to three days. (*Id.,* Tr. 44-45).[6]

Plaintiff testified about her daily life and activities in 2012, which included caring for her "active" three year-old, cooking, shopping, and doing light cleaning. (*Id.,* Tr. 47-48). Plaintiff testified there were times she would be in bed for two weeks at a time due to pain, and her family would help out. (*Id.* at 9317-18, Tr. 50). At this time, she was taking 90 mg of morphine for pain. (*Id.,* Tr. 41, 51). She did not use any assistive devices for mobility. (*Id.*, Tr. 52).

---

[6]     Plaintiff explained pelvic congestion syndrome "is kind of like a big balloon if…you're standing and then if you're laying flat…like the water balloon would flatten. And so when the balloon is big – it's right next to blood vessels or nerves and so if the balloon is big it hurts, if the balloon is flat it doesn't hurt. So if I stood it hurt, if I was flat the pain would be less or relieved. So I only had like a few good hours in the morning, the rest of the time I had to be recumbent with my legs elevated." (R. 35, PageID 9321-22, Tr. 53).

With respect to her employment, Plaintiff, who was age 38 as of the DLI, had extensive experience working as a registered nurse, lecturer, and nurse practitioner. (R. 35 at 9311, citing Tr. 58, 65, 101). She testified about her career as a clinical nurse practitioner, from 2003 to 2007 or 2008, which she left due to pain. (*Id.,* Tr. 36). She worked as a research nurse, which although a "desk job" required a lot of standing and going to prenatal visits with patients. (Tr. 65). She recalled having to wheel herself down the hall in a chair because she could not walk. (*Id.,* Tr. 37). This job eventually became too physically demanding, so she quit. (*Id.,* Tr. 35). Plaintiff then became a lecturer at Kent State University. (*Id.* at 9320, Tr. 39, 93). She thought this was a better fit for her because this job was not a 9-to-5 commitment, and she could work evenings and weekends and plan ahead to get her job done. (*Id.,* Tr. 39-40). She performed this job for four and half years, just short of the five-year disability vesting mark. (*Id.*, Tr. 40, 94).

After moving to Texas, Plaintiff accepted a position as a school substitute nurse – believing she had "overcome the pelvic congestion syndrome." (*Id.*, Tr. 38). She only worked in this job six to ten days total. (*Id.,* Tr. 41-42). Plaintiff also testified about opening a consulting business (*id.*) and a desk position she took during the pandemic. (*Id.,* Tr. 42). She left this job because she was making critical errors due to vision problems.7(*Id.,* Tr. 42-44).

A Vocational Expert ("VE"), Kassandra Humphress, also testified about Plaintiff's past work and ability to perform certain positions. (*Id.,* Tr. 56-62). Ms. Humphress testified about the transferability of Plaintiff's skills into light and sedentary job classifications of research nurse, medical record coder, and utilization review coordinator of which there are 100,000, 25,000, and 15,000 jobs respectively in the national market. (*Id.*, Tr. 62-68).

---

[7]     As Plaintiff testified, she has a congenital eye problem, which caused double vision and acuity and depth perception issues. (R. 35, PageID 9321, Tr. 43). She has had approximately six surgeries on her eyes (*id.*), but has "given up" trying to find the correct prescription for her vision because her medication makes her vision inconsistent. (*Id.*).

### 3.     The ALJ's Findings

The ALJ issued a written decision on October 4, 2023, making the following findings:

1. Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2012 (the DLI).

2. Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date through the DLI. (20 C.F.R. §§ 404.1571 *et seq.*).

3. Plaintiff had the severe impairment of left pudendal neuropathy through the DLI (*See* 20 C.F.R. § 404.1520(c)).

4. Through the DLI, Plaintiff did not have any impairment(s) that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (*See* 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5. Through the DLI, Plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).

6. Through the DLI, Plaintiff was capable of performing past relevant work as a professor, nurse practitioner, and research nurse. This work did not require the performance of work-related activities precluded by the Plaintiff's RFC.[8] (*See* 20 C.F.R. § 404.1565).

7. Plaintiff was not under a disability, as defined in the Social Security Act, at any time from June 1, 2011, the alleged onset date, through December 31, 2012, the DLI (*See* 20 C.F.R. § 404.1520(f)).

(R. 35, PageID 9323, Tr. 92-102, R. 5 at 123-50).

The Appeals Council denied Plaintiff's request for review of the ALJ's decision (*Id.* at 369-41), making the Commissioner's decision final on October 17, 2024. (R. 37-42). *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed this action for review on December 16, 2024. (R. 1).

### 4.     Findings of the Magistrate Judge

---

[8]     A claimant's RFC (residual functional capacity) describes what work-related functions the claimant can still perform despite the medically determined impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a).

The Magistrate Judge examined whether Plaintiff documented she was "insured" at the time of disability, by demonstrating an inability to engage in "substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315, 404.1505(a). (R. 35 at 9324). In employing the substantial evidence and zone of choice standards, *infra,* he reviewed the five-step process also employed by the ALJ:

1. Whether Plaintiff is engaged in substantial gainful activity;
2. (If not), whether Plaintiff has a severe impairment;
3. (If so), whether the impairment meets the listing found in Part 404, Subpart P, App'x. 1;
4. (If not), whether Plaintiff can perform past relevant work in light of the RFC; and
5. (If not), whether Plaintiff (based on her age, education, and work experience) can perform other work found in the national economy?

The Magistrate Judge found, despite the fact Plaintiff supported her diagnoses, she still had to show they affected her ability to work prior to the DLI, something she failed to do. (R. 35 at 9333). Thus, he found the ALJ's Step One and Two findings consistent with the limited pre-DLI medical record. (*Id.*). The Magistrate Judge further confirmed the ALJ's Step Three Listing analysis, finding it meaningful and his specific analysis regarding Listing 11.14 (peripheral neuropathy) appropriate because "the medical evidence during the relevant time did not indicate any disorganization of motor functioning."(*Id.* at 9336).

With respect to the Step Four RFC analysis, the Magistrate Judge did not dispute Plaintiff's assertions about the potential relevancy of post-DLI evidence; however, he found remand was not appropriate given the "scant evidence…for the post-DLI evidence to relate back to." He further ruled the ALJ properly considered Plaintiff's subjective symptom statements (*Id.* at 9343); that the ALJ appropriately clarified his assessment of the medical opinions (*Id.* at 9345); and that no records demonstrated a need for non-exertional limits Plaintiff alleged the ALJ failed to include. (*Id.* at 9347). Thus, the Step Four RFC analysis was proper. (*Id.*). Finally, he dismissed Plaintiff's challenge to the use of Grid Rule 201.23 at Step Five, which applies to "younger" individuals (age

9

18-44), who will only be considered disabled if they are illiterate and have unskilled or no previous work experience. 20 C.F.R. Part 404, Subpart P, Appendix 2. (*Id.* at 9348-49).

**Legal Analysis**

### 1. The Court's Standard of Review

The matter is now before the Court for a *de novo* review of the findings to which Plaintiff objects. Upon judicial review, the Court's role is limited to reviewing the Commissioner's decision to determine whether it is supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g). The Commissioner's conclusions must be affirmed absent a determination it failed to satisfy one or both of these two criteria. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). The Court may affirm, reverse, modify, and/or remand the Commissioner's decision. *Id.* And in review of the Magistrate Judge's Report, "[t]he district judge may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

Substantial evidence "means…'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence means more than a scintilla, but less than a preponderance and is such evidence "as a reasonable mind might accept as adequate to support a conclusion." *Brainard v. Sec'y of Health & Hum. Servs.,* 889 F2d, 678, 681 (6th Cir. 1989). This standard "presupposes that there is a *zone of choice* within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (emphasis added). Therefore, if substantial evidence supports the ALJ's decision, a court must defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also*

10

*Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *see also Cutlip v. Sec'y of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

### 2. *Plaintiff's Objections*

Plaintiff generally argues the Magistrate Judge did not apply proper legal standards and misapplied the "substantial-evidence" and "zone of choice" standards. (R. 42, PageID 9611). As discussed above, those are the proper standards upon review. In addition, Plaintiff specifically asserts nine Objections of error:

1. Misapplying SSR 18-01p and SSR B3-20 by failing to make a legally adequate onset determination and ignoring pre- and post-DLI evidence relating to the relevant period;

2. Misapplying SSR 16-3p and SSR 96-8p by using isolated and subjective pain entries to deny disability, thereby discrediting Plaintiff;

3. Applying medically impossible criterion and misunderstanding defining features of pelvic congestion syndrome and pudendal neuropathy;

4. Evaluating and rejecting conditions Plaintiff never alleged (*i.e.* Nutcracker Syndrome);

5. Ignoring opinions of treating physicians and specialists before the DLI;

6. Failing to perform statutorily proper listing-level analysis despite evidence of severe peripheral neuropathic impairment and marked physical limitations;

7. Reliance on non-specialist state agency reviewers;

8. Misclassifying Plaintiff's past work history under incorrect DOT codes, failing to evaluate past relevant work as "actually performed" and improperly analyzing skills; and

9. Failing to account for SSA's own disability determinations and disability-freeze implications.

(R. 42, PageID 9611-14).

Additionally, in her "Comprehensive Objection," (R. 48), which the Court treats as her Reply, Plaintiff asserts new Objections concerning the Magistrate Judge's review, asserted unacknowledged arguments in her Reply Brief, and an inability to proffer evidence and clarify statements at the hearing. (R. 48, PageID 9745-46). She also raises an ineffective assistance of

11

counsel argument (*id.* at 9746), typically argued by criminal defendants in habeas corpus proceedings asserting violations of the Sixth Amendment. To the extent Plaintiff raises newly asserted arguments not previously identified in R. 42, they are well past any reasonable period for objecting to the Magistrate Judge's R&R. (*See* R. 35, PageID 9352). Therefore, they will not be addressed, as they are deemed forfeited. *Toth v. Ford Motor Co.*, No. 1:08-CV-00391-JG, 2008 WL 11380224, at *1 (N.D. Ohio Sept. 18, 2008) (Gwin, J) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327 (6th Cir. 2008); *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). And on *de novo* review of the record in light of Plaintiff's Objections as outlined above, the Court finds no argument that would lend to reversal or remand.

Plaintiff first objects that the Magistrate Judge misapplied SSR 18-01p and SSR B3-20 by ignoring pre- and post-DLI evidence relating to the continuous narrative and relevant time period. SSR 18-01p replaced B3-20 and pertains to Titles II and XVI: "Onset of Disability." Plaintiff argues that the ALJ failed to treat her symptoms as a single progressive disease. She states her condition was present since 2011, as doctors attempted to rule out conditions in determining a diagnosis, which ultimately they did – pelvic congestion syndrome. Therefore, she argues, she was disabled during the relevant period of June 1, 2011 to December 31, 2012.

The SSR explains what "established onset date" (EOD) means and clarifies how the Social Security Administration (SSA) determines EOD. "Generally, the EOD is the earliest date that the claimant meets both the definition of disability and the non-medical requirements for entitlement to benefits under title II of the Act or eligibility for SSI payments under title XVI of the Act during the period covered by his or her application." SSR 18-1p.[9] An ALJ is not required to call upon a

---

[9]     https://www.ssa.gov/OP_Home/rulings/di/01/SSR2018-01-di-01.html

medical expert to assist with inferring the date that the claimant first met the statutory definition of disability. *McClanahan v. Comm'r of Soc. Sec.,* 474 F.3d 830 (6th Cir. 2006). SSR 18-01p.

Applying this to Plaintiff's Objection concerning pre- and post-DLI information, in establishing a claim for disability insured benefits, medical evidence detailing Plaintiff's condition during the insured time period is relevant. *Forshee v. Comm'r. of Soc. Sec.,* No. 11-cv-12339, 2012 WL 1672974, at *8 (E.D. Mich. Apr. 11, 2012), *adopted,* 2012 WL 1676645 (E.D. Mich. May 14, 2012). The Regulations only obligate the Commissioner to develop the claimant's medical history for twelve months preceding the month of application for benefits. 20 C.F.R. 416.912(d). Evidence of medical condition postdating the expiration period may be considered but need not be given weight. *Emard v. Comm'r of Soc. Sec.,* 953 F.3d 844, 851 (6th Cir. 2020).

It is unclear to the Court what alleged evidence is missing. As Defendant points out, the record is replete with medical notations about Plaintiff's pain management, OB/GYN, radiology, and other medical issues and providers for a period spanning 2007 until 2013. (Tr. 3511-3541, 4376-4503, 4658-4821). These records start years before her alleged EOD and end after the DLI. As the Magistrate Judge noted, both he and the ALJ "review[ed] the entire medical record," and noted the only records during the relevant time period concerned a nasal lesion and an allergy test. (R. 35, PageID 9328, citing Tr. 96-100, 3573-75, 4389). The Magistrate Judge appropriately determined substantial evidence in the record supports "that the post-DLI medical evidence did not relate back to [Plaintiff's] functionality between June 1, 2011 and December 31, 2012." (R. 35 at 9328). The Court agrees. Plaintiff has thus demonstrated no error with either the Magistrate Judge's Report and Recommendation or the ALJ's decision.

Examining the ALJ's findings at Step Two – whether Plaintiff had a medically determinable impairment or combination that substantially limited her ability to perform basic work activities – the Magistrate Judge appropriately found no error in the ALJ's findings. He found Plaintiff has a

13

severe impairment – left pudendal neuropathy – and the non-severe impairments of sleep apnea and strabismus. (*Id.* at 9331, citing Tr. 85). The ALJ could not determine the other asserted conditions were medically determinable impairments during the relevant time period. (*Id.,* Tr. 96). The Magistrate Judge found, despite Dr. Joseph's conclusions in the years before the onset date, the ALJ did not err because the record reflects Plaintiff did not seek treatment for these conditions, nor did she complain of pain during the relevant time period. (*Id.* at 9332-33). The Court concurs. Plaintiff failed to demonstrate these prior diagnoses had any effect on her ability to work.

Turning to the second objection, Plaintiff claims the Magistrate Judge misapplied SSR 16-3p and SSR 96p by using subjective pain entries to deny benefits. SSR 96p-7 was rescinded and replaced by 16-3p and removed the word "credibility" from the regulatory policy. In determining whether an individual is disabled, the SSA considers a multitude of factors, *including pain*, using a two-step process set forth in the SSR. The Commission first determines if there is an underlying physical or mental impairment "that could reasonably be expected to produce the claimant's symptoms." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (citing  20 C.F.R. § 416.929(a)). If that is established, the Commission must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities…or to function independently, appropriately, and effectively in an age-appropriate manner." *See* 20 CFR § 404.1529(c)(3).

This Code provision clearly informs applicants that pain is "subjective and difficult to quantify" and therefore medical and nonmedical sources will be considered. Moreover, 20 C.F.R. § 416.929 outlines how pain is measured, which includes "statements about…pain and how the symptoms affect[] activities of daily living…" § 416.929(a). "Symptoms, including pain, must be supported by objective findings of a "medically determinable impairment…." § 416.929(b). "In evaluating the intensity and persistence of [the claimant's] symptoms, subjective statements about

14

how pain impacts daily activities, the location, duration, frequency, and intensity, precipitating and aggravating factors and the impact medication, exercise or other mitigation efforts are all considered." § 416.929(c). Plaintiff takes issue with the "Numeric Rating Scale" (zero to ten), but this is a widely used acceptable measurement of pain. There is therefore no basis for this Objection.

Third, Plaintiff objects to application of "medically impossible criterion (dilated nerves; dilated veins)" and alleged "misunderstanding defining features of pelvic congestion syndrome and pudendal neuropathy." Plaintiff simply restates her arguments regarding the ALJ's alleged error and fails to identify any error by the magistrate judge to warrant reversal. *See Andres v. Comm'r of Soc. Sec.*, 733 F. App'x 241, 244 (6th Cir. Apr. 30, 2018). Similarly, Plaintiff objects to reference to conditions never alleged, such as Nutcracker Syndrome, but Plaintiff brought these conditions into consideration in the first place. (*i.e.*, *R*. 42, PageID 9612, R. 35, PageID 9332, Tr. 4430, R. 5, PageID 411, 420). Thus, the Court rejects her fourth objection as well.

Plaintiff's fifth objection contends the ALJ ignored opinions of treating physicians and specialists relating back to the period before the DLI. This objection lacks merit and is overruled for the reasons outlined above.

In her sixth objection, Plaintiff argues the ALJ failed to perform a statutorily proper listing-level analysis despite evidence of severe peripheral neuropathic impairment and marked physical limitations. This relates to Steps Three and Four of the disability analysis. *See* 20 C.F.R. Part 404, Subpart P, App'x 1. It was Plaintiff's burden to prove she has an impairment that meets or medically equals all of the criteria of one or more listed impairments. *Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001); *Forrest v. Comm'r of Soc. Sec.,* 591 F. App's 359, 366 (6th Cir. 2014). If the impairments do not meet all criteria, the analysis proceeds to Step Four. 20 C.F.R. § 404.1520(d)-(e).

The ALJ found through the DLI date, Plaintiff did not meet the listing criteria, and the Magistrate Judge found the ALJ engaged in a meaningful analysis and that his findings regarding Listing 11.14 (peripheral neuropathy) were appropriate. (R. 35 at 9335-36). *See* App'x 1, § 11.01 (Category of Impairments, Neurological Disorders). The Court, finding no error, affirms the Magistrate Judge's findings concerning Step Three and turns to Step Four of the disability analysis.

The ALJ must make a determination of the claimant's RFC, which is an assessment of one's ability to work despite impairments. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), SSR 96-8p. This entails "assessing the limitations and restrictions imposed by all of a claimant's impairments, both severe and non-severe, considering the medical history, medical signs, lab results, findings and statements about how the symptoms affect him or her." 20 C.F.R. § 404.1529(a); SSR 96-8p. In making this determination, the more consistent a medical opinion is, as supported by other sources, the more persuasive (consistency standard). And the more relevant the objective medical evidence and supporting explanations presented by a medical source to support the medical opinion, the more persuasive (supportability standard). *See* 20 C.F.R. 416.920c(c)(1), (2).

Recognizing the consistency and supportability standards, the ALJ appropriately explained his consideration. Medical opinions concerning Plaintiff's functional capacity were not proffered during the relevant time period, and the opinions did not aver to her condition during that time; therefore, the ALJ appropriately found them not relevant. (R 35 at 9345). The ALJ found the record "supports a conclusion that [Plaintiff] was experiencing mild to somewhat moderate pelvic pain from the 2011 alleged onset date until the December 31, 2021 date last insured." (*Id.* at 9338, Tr. 97). The Magistrate Judge, finding this "gracious" found no records of contemporaneous complaint of pelvic floor symptoms from 2011 to 2012, only records from 2007 to 2008 where she reported mild or moderate pain effectively treated with medication and a few early 2011 records where she reported no to moderate pain. (R. 35 at 9338, Tr. 3512, 3517-21, 3534-36, 3566, 3572, 4377).

16

Plaintiff argues the ALJ ignored SSR 16-3p in his RFC analysis. An ALJ's consideration of subjective symptoms is entitled to great deference. *Lipanye v. Comm'r of Soc. Sec.,* 802 F. App'x 165, 171 (6th Cir. 2020). The ALJ was "to determine whether [Plaintiff] has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged," reviewing the objective medical evidence and acceptable medical sources. *Grames v. Comm'r of Soc. Sec.,* 815 F. App'x 820, 825 (6th Cir. 2019); 20 C.F.R. § 404.1529(c)(2). And if so, the ALJ next determines "the extent to which the pain affects [Plaintiff's] ability to work, considering objective medical evidence, as well as daily reported activities and all other evidence evaluating intensity, persistence, and functional limitations." *Heart v. Comm'r of Soc. Sec.,* No 22-3282, 2022 WL 19334605, at *3 (6th Cir. Dec. 8, 2022); 20 C.F.R. § 404.1529(c); SSR 16-3p.

The ALJ found the record supported that Plaintiff was experiencing mild to moderate pelvic pain from EOD to DLI and had medically determinable impairments (left pudendal neuralgia being the most severe). (R. 35 at 9341-42, Tr. 95-97). He also discussed Plaintiff's statements about the pain when compared from 2006 to 2012, including her reports of walking and caring for her toddler. (*Id.* at 9342, Tr. 98-100). He therefore concluded the medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the symptoms did not occur with such frequency, duration, or severity as to reduce her RFC beyond light work, particularly considering her statements of decreased pain, such as her January 2011 rating of 0/10, and improved functional activities. (*Id.*). The Magistrate Judge found the ALJ's analysis in line with the regulations.

The question for this Court is whether the ALJ's decision is supported by substantial evidence. *See e.g. Brainard v. Sec'y of Health & Hum. Servs.,* 889 F.2d 679, 681 (6th Cir. 1989); *Nelson v. Comm'r of Soc. Sec.,* 195 Fed. App'x 462, 468 (6th Cir. 2006); *Hunter v. Comm'r of Soc. Sec.,* No. 3:19-cv-1977, 2021 WL 32116, at *3 (N.D. Ohio Jan. 5, 2021) (Knepp, J.) ("it is well settled that this Court cannot and will not re-weigh evidence; in these cases, the Court exists solely

to determine whether the ALJ's findings, on initial review, are supported by substantial evidence.") (*citing Wright v. Massanari*, 321 F.3d 611, 614-15 (6th Cir. 2003)); *Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL 4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). Because the decision is supported by substantial evidence, I affirm the Magistrate Judge's findings on this issue.

For her Seventh Objection, Plaintiff argues the agency reviewers, Dr. Paul Sporn and Dr. Jeffrey Faludi, were not specialists in the fields of pelvic neurology, pelvic vascular disorders, or neuro-ophthalmology, arguing their opinions are less persuasive than her physicians. The Court first notes that Dr. Sporn is a Gynecological Specialist (R. 5, PageID 111), and Dr. Faludi is an Ophthalmology Specialist. (*Id.* at 116). Both were qualified in their fields. Regardless, a medical consultant is a licensed physician as defined in § 416.1502(a)(1) (medical or osteopathic doctor). *See* 20 C.F.R. § 404.1616(b). Both qualified under the Regulations as medical consultants and need not have direct specialty in a subset of that field. *Clark v. Comm'r of Soc. Sec.*, No. 1:23-cv-1024, 2024 WL 3311110, at *2 (W.D. Mich. July 5, 2024), *aff'd,* No. 24-1718, 2025 WL 1627408 (6th Cir. June 9, 2025) (rejecting plaintiff's argument that treating physicians were more credible that the non-examining medical reviewers). *See also Johnson v. Barnhart*, 434 F.3d 650, 656 (4th Cir. 2005) (finding medical examiner - a board certified internist, who reviewed the plaintiff's medical history, diagnosing her with chronic pain syndrome but concluding she had the RFC for light work - was appropriate as his opinions were consistent with treating providers, a chronic pain specialist and an orthopedic surgeon); *Koenig v. Chater*, 936 F. Supp. 776, 781 (D. Kan. 1996) (independent agency review by an allergy, immunology, and rheumatology specialist of plaintiff's fibromyalgia and bunion claims was appropriate).

18

In addition, Plaintiff applied for benefits on April 28, 2021 (R 5, PageID 111, 375), long after the SSA's rule changes went into effect concerning weighing medical opinions and prior administrative medical findings.[10] *See* 20 C.F.R. §§ 404.1520c & 416.920c. The changes eliminated any hierarchical consideration of medical opinions, including the elimination of the treating physician rule. *See e.g. Kinney v. Comm'r of Soc. Sec.*, No. 5:20-CV-1155, 2021 WL 3854828, at *4 (N.D. Ohio Aug. 30, 2021) (report and recommendation "accurately reflected the fact that the hierarchical deference previously afforded opinions of a treating physician had been eliminated.") (Lioi, J); *Bovenzi v. Saul*, No. 1:20-cv-185, 2021 WL 1206466, at *3 (N.D. Ohio Mar. 31, 2021) (Pearson, J.). ("Under the new regulations applicable to claims filed on or after March 27, 2017, the opinions of [a treating medical source] are not entitled to any specific evidentiary weight.").

Plaintiff further argues the ALJ failed to fully develop the record concerning her "rare, multi-system impairments" in violation of her due process rights.[11] Pursuant to 20 C.F.R. §§ 404.1520c(a) & 416.920c(a), an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [] medical sources." An ALJ's must "articulate in [the] determination or decision how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

In this case, the ALJ fulfilled the appropriate standards, and disagreement with his weighing of the evidence does not itself warrant overturning the decision, particularly as the applicable

---

[10] "Prior administrative findings" refers to the findings of the State Agency reviewers. 20 C.F.R. § 404.1513(a)(1)(5). While the new regulations differentiate between "medical opinions" and "prior administrative medical findings," the regulations do not ascribe greater significance to either. Both and are evaluated using the same factors. 20 C.F.R. §§ 404.1520c & 416.920c.

[11] Plaintiff misconstrues due process rights guaranteed by the Fifth and Fourteenth Amendments. Regardless, she was given ample opportunity to build the record with medical evidence and testimony, and did so.

regulations allow the ALJ "to evaluate the persuasiveness of submitted medical opinions, with particular focus on their supportability and consistency." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at \*6 (6th Cir. June 12, 2024). Plaintiff's attempt to undermine the analysis does not render it inadequate, as the Court does not make credibility determinations, or reweigh the evidence in its review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (*quoting Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).

A reviewing court may reverse if the ALJ did not apply proper legal standards or "[did] not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (Lioi, J.) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996). As discussed in the Magistrate's Report and Recommendation (R&R), the ALJ appropriately considered the medical expert opinions during the relevant time period. No objections to the exhibits were lodged and all were admitted into evidence. (R. 35 at 9317, Tr. 29). The Magistrate Judge's R&R correctly identifies the applicable regulations and standards of evaluation required. The Court agrees with the R&R that the ALJ's opinion offers a cogent explanation of the reasons underlying the determination that Plaintiff did not qualify for benefits. Therefore, this Objection is overruled.

In the eighth objection, Plaintiff challenges the categorization of her past work history under incorrect DOT codes,[12] arguing she was a nursing instructor, which is "very different from … professor." I find this a distinction without a difference, particularly because as the vocational expert (VE) testified, nothing in this categorization changed her opinion. (R. 5 at 94). She further

---

[12]     The vocational expert testified Plaintiff had past relevant work as a Registered Nurse, DOT Code  075.364-010, classified as Medium and skilled with a SVP of 7; Professor (lecturer), DOT Code 090.227-018, light and skilled with a SVP of 8; Nurse Practitioner, DOT Code 075.264-010, light and skilled with a SVP of 8; Research Nurse, DOT Code 189.117-030, classified by the DOT at sedentary but performed at light, and skilled with a SVP of 8. (R. 5 at 92).

challenges the ALJ's transferability of skills finding and the RFC assessment, but the Court finds no error in the ALJ's analysis, and therefore, this Objection is overruled.

In her ninth and final objection, Plaintiff asserts the ALJ failed to account for the SSA's own disability determinations and disability-freeze implications. Plaintiff argues that she was previously awarded benefits, but the agency did not disclose or incorporate the prior decision into this case. (R. 42, PageID 9648-49). As Defendant notes, Plaintiff did not previously make this argument to the Magistrate Judge; however, the Court will address since Plaintiff is proceeding pro se.

The cases to which Plaintiff cites are inapposite. The Sixth Circuit in *Earley v. Comm'r. of Soc. Sec.* does not stand for the principle that the Commission must consider prior disability findings in subsequent applications. The *Earley* Court held res judicata applies to bar both the government and applicants from relitigating a past final decision where a subsequent application raises no new evidence. 893 F.2d 929, 933 (6th Cir. 2018). It further noted ("Human health is rarely static…any earlier proceeding that found or rejected the onset of a disability could rarely, if ever, have 'actually litigated and resolved' whether a person was disabled at some later date."). As the *Earley* court held, "when an individual seeks disability benefits for a distinct period of time, each application is entitled to review." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 748, (2001)). *See also Wireman v. Comm'r of Soc. Sec.*, 60 F. App'x 570, 571–72 (6th Cir. 2003) (finding limitations noted to be present at the time of other decisions were not relevant to the limitations present when the plaintiff's insured status expired). Plaintiff's objection is misplaced and overruled.

### 3. *Plaintiff's Motions to Remand*

As a final note, in two unauthorized Motions, Plaintiff moves the Court to remand the matter to the Commissioner, arguing the attached evidence justifies it. In the first Motion (R. 40), Plaintiff submits twenty-two attachments from 2006, 2007, 2012, 2013, 2023, 2024, and 2025. (R. 40-1 to 40-22).

"The court ... may at any time order additional evidence to be taken before the Secretary, but only upon showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding...." 42 U.S.C. § 405(g) (emphasis added). Remand is appropriate only where the claimant demonstrates these factors. *Oliver v. Secr'y. of Health & Hum. Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (citing *Willis v. Secr'y. of Health & Hum. Servs.,* 727 F.3d 551 (6th Cir. 1984)).

Evidence is only "new" if "it was not in existence or available…at the time of the administrative proceeding." *Hollon ex rel. Hollon v. Comm'r of Soc. Sec.,* 447 F.3d 477, 484 (4th Cir. 2006) (citations omitted). Generally, courts find evidence is not new if the claimant did not seek it diligently or when it was created after administrative law judge's decision. *Peek v. Commissioner of Social Security,* 585 F. Supp. 3d 1014 (E.D. Mich. 2021) (citing 42 U.S.C. § 405(g)). Nor can evidence be considered new if it is merely cumulative of what was presented during the underlying administrative proceedings. *Tolbert v. Sullivan,* 773 F. Supp. 1258 (E.D. Mo. 1991), *aff'd*, 966 F.2d 1459 (8th Cir. 1992); *Skeens v. Sullivan*, 737 F. Supp. 362 (W.D. Va. 1990); *Evangelista v. Secr'y. of Health & Hum, Servs.,* 826 F.2d 136 (1st Cir. 1987) (opinion of specialist, who examined claimant months after plaintiff filed a district court complaint was not new evidence since the medical record before the ALJ "was voluminous, detailed and complex, spanned many years and dealt with an array of ailments"); *Mongeur v. Heckler,* &22 F.2d 1033 (2d Cir. 1983) (medical reports revising a prior diagnosis where claimant's condition had not been previously identified and the symptoms and effects were present for a long period and considered by the SSA was not "new"). Plaintiff's nearly seventy page attachment does not meet this standard.

Additionally, to prove materiality, the claimant must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence. *Sizemore v. Sec'y of Health & Hum. Servs.*, 865 F.2d 709,

711 (6th Cir. 1988) (*accord Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir.1980)); *Ward v. Schweiker,* 686 F.2d 762, 764–65 (9th Cir.1982); *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir. 1981)). *See also Ward v. Schweiker,* 686 F.2d 762, 764 (9th Cir. 1982) (citing *Carter v. Schweiker,* 649 F.2d 937, 942 (2d Cir. 1981)); and *Bruton v. Massanari,* 268 F.3d 824 (9th Cir. 2001) (evidence of ALJ's subsequent decision to award disability benefits on second application, after the initial application was denied, was not material to warrant remand because the second application involved different medical evidence, a different time period, and a different age classification). Some of the attachments are not new; others do not shed light on Plaintiff's condition during the relevant time period and are irrelevant to the Commissioner's determination; and/or others even dispel the notion Plaintiff had any functional limitations during the relevant time period. Thus, the Court finds the information submitted is not materially sufficient to reverse or remand the case.

Nor does Plaintiff establish why she had good cause for failing to submit the information during the administrative proceeding or before her Motion. As the *Willis* Court noted, in examining the legislative history of § 405(g), the 1980 amendment was "designed to limit the ability of a reviewing federal court… to limit the discretion of federal judges to remand for reconsideration of new evidence." 727 F.3d at 553-54; *Dorsey v. Heckler,* 702 F.2d 597, 604 (5th Cir. 1983)). The Sixth Circuit has applied a stringent standard, under which a claimant must provide a valid reason for his or her failure to obtain the additional evidence during the administrative proceedings. *Oliver v. Secr'y. of Health & Hum. Servs.,* 804 F.2d 964 (6th Cir. 1986), *Franson v. Comm'r of Soc. Sec.,* 556 F. Supp. 2d 716 (W.D. Mich. 2008). In *Oliver,* the court was faced with a similar issue. The plaintiff submitted additional medical reports prepared after the final decision. Citing *Willis v. Secr'y of Health & Hum. Servs., supra,* the court found the plaintiff had failed to show "good cause" by demonstrating a valid reason for failing to obtain the evidence prior to the hearing.

*Oliver,* 804 F.2d at 966. In addition, the court found the evidence was not material to the Secretary's decision to deny the plaintiff disability insurance benefits. *Id.*

This analysis also extends to Plaintiff's second Motion to Remand and the subsequently filed Addendum. (R. 46, R. 51). In this Motion, Plaintiff attaches letters from two providers, and asks the Court to consider new evidence from a primary care provider, Dr. Liu, and anticipated testimony from a gastroenterologist, Dr. Ford. (*Id.* at 9686, R. 46-1. 46-2). These documents fail to satisfy the aforementioned standards. In addition, Plaintiff had not yet seen Dr. Ford, and the Court need not and will not speculate about future appointment with him. Additionally, Dr. Liu, who opines Plaintiff stopped working in 2011 due to severe pain symptoms and continues to be debilitated with pain, first saw Plaintiff as a patient in November 2025. This opinion bears little weight as it appears Plaintiff is forum-shopping for medical testimony, which will not be considered upon review of the Magistrate Judge's findings. *Bodnarchuk v. Barnhart,* 70 F. App'x 411, 413 (9th Cir. 2003) (opinion rendered nearly twenty years after insured status expired was less persuasive when obtained after an adverse determination on claimant's application for benefits).

Plaintiff cannot demonstrate good cause for such late submission of these records. Nor are they material to the Court's review. Therefore, the Court denies Plaintiff's Motions to Remand as Plaintiff fails to meet the requirements of 42 U.S.C. § 405(g).

### 4. *Motion for Leave to File Reply / Motion for Clarification*

The Court also denies Plaintiff's Motion for Leave/Motion to Clarify (R. 52). The Court liberally allowed and considered all of Plaintiff's filings, including three sets of Objections. Some of these documents were filed during the Court's automatic stay (*See* 10/01/2025 NDO) and some after it was lifted (*See* 11/14/2025 NDO). Regardless of when they were filed, Plaintiff presented considerable information and arguments. Because the filing of an out-of-rule Reply and clarification as to Defendant's filings (R. 44, R. 45) are unnecessary, the Court denies them.

### 5. *Motion to Appoint Counsel*

As a final note, Plaintiff has filed a second or "Renewed" Motion for Appointment of Counsel. (R. 49). For the same reasons the Court denied the original request (R. 15), the Court does so again today. (*See* R. 17, PageID 9077-78). While a district court may appoint pro bono counsel for an indigent civil litigant, here the circumstances do not so warrant. *See* 28 U.S.C. § 1915(e)(1); *Rener v. Sewell,* 975 F.2d 258, 261 (6th Cir. 1992). Plaintiff has sufficiently represented herself through this appeal. Moreover, the conclusive nature of this Order renders such request moot.

### Conclusion

The Court, having reviewed the briefs, the Report and Recommendation, the Objections, the Motions to Remand, the Oppositions and Replies, and the relevant evidence of record, agrees with the reasoning of the Magistrate Judge. Therefore, the Court, finding no error in the Report and Recommendation, AFFIRMS AND ADOPTS the Magistrate Judge's findings (R. 35). In doing so, the Court GRANTS Plaintiff's Motion for Leave [to Exceed] Page Limits (R. 41); OVERRULES Plaintiffs' Objections (R. 37, R. 38, R. 42, R. 47, R. 48); and DENIES her Motions to Remand (R. 40, R. 46, R. 51); her second Motion to Appoint Counsel (R. 49); and her Motions to File/Motion for Clarification (R. 50, R. 52).

**IT IS SO ORDERED.**

Date:  March 26, 2026

s/ *David A. Ruiz*
David A. Ruiz
United States District Judge

25